BRUNOT, J.
 

 This is a suit for $7,954.40, the balance of an account alleged to be due by the defendant to the plaintiff for transporting cars of garbage from the Public Belt interchange tracks, in the city of New Orleans, to and from a garbage dump maintained by said city. The defendant denies that it is indebted to the plaintiff in any sum. It admits that it received the service, as alleged in the petition, but it avers that the service was rendered under a special agreement, and that it has fully paid the agreed special tariff, rate, or charge therefor. In a supplemental answer, the defendant invokes the provisions of Act 223 of 1914, and pleads the prescription of two years as a bar to the recovery of any part of the sum sued for which accrued two years or more prior to the filing of the suit. The case was tried, and submitted, but it was reopened, and on the day it was finally submitted to the trial judge, the defendant filed an exception to the petition upon the ground that it did not disclose a right or cause of action. This exception was not directly passed upon, but the judgment which was rendered, in effect, overruled it. The judgment sustains defendant’s plea of prescription, but is, otherwise, in favor of the plaintiff and against the defendant. From this judgment the defendant appealed. The plaintiff has answered the appeal and prays that the judgment, in so far as it sustains defendant’s plea of prescription, be reversed, and that there now be judgment in favor of the plaintiff and against the defendant for the full amount sued for with legal interest thereon, as prayed for in the petition.
 

 Notwithstanding an allegation to the contrary in the petition, plaintiff now concedes that under the provisions of the Interstate Commerce Act- of 1887, as amended (49 USCA § 1 et seq.), and of article 287 of the Constitution of 1913, and article 6 of the Constitution of 1921, public carriers may serve the state or city, parish, or town government, free of cost or at reduced rates. Being thus
 
 *784
 
 authorized, a special contract for such service is lawful and enforceable, but plaintiff contends that it did not enter into a special agreement with the defendant. If it did, and if the defendant has not acquiesced in the plaintiff’s present interpretation of the agreement, the plaintiff’s suit falls. If it did not, and if the expressed willingness of Mr. Wilbert Black, city commissioner of public property, to approve and pass plaintiff’s bills for payment, binds the defendant, the plaintiff is entitled to a judgment as prayed for.
 

 It is shown that the negotiations, which were had prior to the agreement reached by the plaintiff and defendant, were carried on by Hon. Martin Behrman and Mr. W. J. Hardie, the then mayor and city engineer of the city of New Orleans, and Mr. D. D. Curran, the then president and general manager of the New Orleans & Northeastern Railroad Company. These negotiations finally resulted in a written proposal, made in the form of a letter, by Mr. Curran to Mr. Hardie on May 5, 1909. The letter follows:
 

 “New Orleans, La., May 5, 1909.
 

 “W. J. Hardie, Esq., New Orleans, La.— Dear Sir: I have your letter of April 29th. If the city elects to dispose of its garbage by means of rail transportation, they to furnish such equipment as is necessary, at their own cost, the N O & N E Railroad will handle the equipment in train lots as indicated from the interchange tracks of the Belt Railroad to the garbage dump and return to the interchange, at a rate
 
 of $3.00 per oar.
 
 We will be prepared to move the cars from the Belt interchange to the garbage dump with reasonable dispatch and return the cars to the Belt Railroad after the cars have been unloaded.
 

 “If the city elects the method of disposing of garbage as described above, we shall request that they provide the right of way and pay the cost of constructing of the trestle, or the embankment. The Railroad Company will furnish the rails and fastenings for the necessary track, and if the trestle construction is decided upon, the Railroad Company will be willing to drive the piling and put up the superstructure for the city at cost price.
 

 “It should be-borne in mind that in locating the dump it should be a sufficient distance from the main line of the N O & N E as not to be objectionable to passengers in passing trains.
 

 “Yours truly
 

 “[Signed] D. D. Curran
 

 “Pres. & Gen. Mgr.”
 

 The defendant elected to dispose of its garbage by means of rail transportation, and it accepted the proposal made in the foregoing letter of the president and general manager of the New Orleans & Northeastern Railroad Company, to Mr. Hardie. It complied with the terms of the agreement by providing the necessary equipment and the right of way, and it paid to the plaintiff the cost price for the construction of the trestle superstructure. After the track was laid thereon, the agreement was carried out, in good faith by both XJarties, until March 1, 1920, approximately ten years.
 

 It appears that when the agreement was entered into, the rate of $3 per ear, for the movement of defendant’s garbage cars, was published and filed with the Railroad Commission of Louisiana, and it became effective June 18, 1910. Mr. Bernard A. Treuting was, at that time, chief clerk in the office of the plaintiff’s assistant general-freight agent. He testified that the tariff rate of $3 per car remained in effect until December 15, 1918, the date General Order 28 of the United States Railroad Administration, authorizing an increase of 25 per
 
 *786
 
 cent, in rates; became effective; that under said order the tariff rate was $4 per car, and this rate remained in effect until October 1, 1920, the date Order 2354 of the Railroad Commission, of Louisiana, fixing a rate of $5.50 per ear, became effective, which rate continued in force until July 1, 1922, “when Supplement No. 13 to Terminal Tariff 477-C, N. O. & N. E., I. C. C. 2929, was published and became effective.” The Supplement No. 13 referred to by the witness reduced the charge of $5.50 per car to $4.95 per car. Beginning with the month of March, 1920, and continuing to March 31, 1923, the plaintiff has rendered monthly statements of account to the defendant, charging thereon the (rate per ear, for the service rendered, in accordance with the then general tariff in effect: First, under General Order 28 of the United States Railroad Administration, from March 1,1920, to October 1, 1920; second, under Order 2354 of the Railroad Commission of Louisiana, from October 1, 1920, to July 1, 1922; and thereafter, under Supplement No. 13 to Terminal Tariff 477-C. The defendant, in its monthly payments to the plaintiff, has adhered to the .rate basis fixed in tfie agreement reached in 1909 and has consistently refused to pay the plaintiff more than $3 per car for the service. Ten years of continuous service, at that rate per car, without complaint, is strongly pursuasive of the intention of the parties to enter into a special agreement. This view is greatly strengthened by the fact that the character of the service to be performed under the agreement is different from and almost wholly outside the ordinary service rendered by a common carrier. We do not think the record justifies us in holding that the movement of defendant’s garbage cars was a switching service. In our opinion it more nearly partakes of and must be likened to a routine transportation. Mr. Curran, as a witness, testified that the rate of $3 per car, for the movement, is not the regular tariff rate which would have applied to routine transportation. We have considered this case carefully and have reached the conclusion that the litigants entered into a special contract or agreement for the performance of a service outside the ordinary duties of a common carrier, at a rate or charge, not subject to the subsequently approved and published tariffs of the Louisiana Bublic Service Commission or of the former Railroad Commission of Louisiana; that no time was fixed in the agreement for its termination; that it could not be abrogated without formal notice of the intention to do so, which was never given; and, as discrimination is the sole ground alleged in the petition as the reason for plaintiff’s demands, plaintiff is not entitled to judgment for any sum whatever. For these reasons it is decreed that the judgment appealed from be, and it is, reversed, and plaintiff’s demands are rejected at its cost.
 

 O’NIELL, C J., absent, takes no part.